IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALLSTATE INSURANCE COMPANY,     *

    Plaintiff,                *

v.                            *     Civil Case No. 1:18-cv-01795–JMC

KY'WON PITTS, *et al*,          *

    Defendants.            *

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

## **MEMORANDUM OPINION**

In this insurance coverage dispute, plaintiff Allstate Insurance Company ("Allstate") has filed a declaratory judgment action against defendants Ky'Won Pitts, Stanley Rochkind individually and on behalf of corporate defendant KGB #6, Inc., and Charles Runkles individually and on behalf of corporate defendant Dear Management and Construction Company.[1] (*See* ECF No. 1). The case is rooted in a suit filed by Pitts in the Circuit Court for Baltimore City against the other defendants alleging injury from lead paint exposure in connection with a property owned, maintained, or managed by Rochkind. (ECF 1-2). Allstate, in turn, seeks a determination of its coverage obligations for that lawsuit from this Court.

The case is before me for all proceedings by the consent of the parties pursuant to 28 U.S.C. § 636(c). (ECF No. 15). Now pending before this Court are three motions. First, is Plaintiff's fully briefed Motion for Summary Judgment, (ECF Nos. 22, 24, and 29). Second, is Defendant Ky'Won Pitt's Motion for Certification, (ECF No. 23), which Allstate opposed. (ECF No. 26). And third, is Defendant Ky'Won Pitts' Motion to Stay, (ECF No. 25), which Allstate also opposed.

---

[1] KGB and Dear Management are forfeited Maryland corporations. ECF No. 1, ¶¶ 4 and 6.

(ECF No. 31).  No hearing is necessary to resolve the issues presented.  Loc. R. 105.6 (D. Md. 2018).  For the following reasons, Defendant Ky'Won Pitts' motions for certification and to stay, (ECF No. 23 and 25), are **DENIED**, and Allstate's motion for summary judgment, (ECF No. 22), is **GRANTED in part** and **DENIED in part** without prejudice.

### I. BACKGROUND

This action arises out of a lead paint poisoning lawsuit filed by Pitts against the other defendants in the Circuit Court for Baltimore City.  (ECF No. 1 at ¶ 9).  Pitts alleged that he was exposed to lead paint while residing at and visiting 1701 Darley Avenue, Baltimore, Maryland.[2] In particular, this case involves a Personal Umbrella Policy issued by Allstate to Mr. Rochkind beginning on June 13, 1988.  Allstate seeks a declaration that it has no duty to defend or indemnify Mr. Rochkind for any alleged lead paint injuries that occurred on or after June 13, 1999, when the policy excluded coverage for claims arising from lead paint exposure.  (*Id.* at ¶¶ 18 and 19). Allstate argues that the pro rata method of damages allocation proscribed by the Fourth Circuit in *Pennsylvania Nat. Mut. Cas. Ins. Co. v. Roberts*, 668 F.3d 106 (4th Cir. 2012) controls and results in Allstate being liable for 24.01% of the total judgment for Pitts, and Mr. Rochkind being liable for the remainder.  (*Id.* at ¶ 20).

Mr. Pitts, on the other hand, argues that the pro rata method is improper.  (*See* ECF Nos. 23, 24, and 25).  He asserts that this area of Maryland law is unsettled and thus this Court should either certify a question to the Court of Appeals of Maryland or stay the proceeding pending a decision by the Court of Special Appeals in *Daquantay Robinson v. CX Reinsurance Company limited, et al.*  No. 01888, Sept. Term 2016.  Alternatively, Pitts argues that if the pro rata method is proper, Allstate utilizes the incorrect exposure "start date" to calculate its pro rata share of the

---

[2] This property was owned and operated by the other defendants.  (ECF No. 1 at ¶ 10).

damages. In light of these arguments, the Court, before proceeding to the motion for summary judgment, will first determine whether certification or a stay are proper.

## II. STANDARDS OF REVIEW

### A. Motion for Certification

Under the Maryland Uniform Certification of Questions of Law Act ("Certification Act"), Md. Code (2013 Repl. Vol., 2017 Supp.), § 12–601 *et seq.* of the Courts and Judicial Proceedings Article, this Court may certify to the Maryland Court of Appeals a question of law "if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling [Maryland] appellate decision, constitutional provision, or statute . . . ." The role of a federal court when considering an issue of state law is to "interpret the law as it believes that state's highest court of appeals would rule." *Abadian v. Lee*, 117 F. Supp. 2d 481, 485 (D. Md. 2000) (citing *Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 957 F.2d 1153, 1156 (4th Cir.), *cert. denied*, 506 U.S. 824 (1992)).

Notably, opinions of the Maryland Court of Special Appeals are not controlling appellate decisions. *Proctor v. WMATA*, 412 Md. 691, 704 (2010). But, if the Court of Appeals has yet to address an issue, a federal court may turn to a decision of the Court of Special Appeals to ascertain state law "unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Allstate Ins. Co. v. Rochkind*, CV ELH-17-3400, 2019 WL 1440647, at *7 (D. Md. Mar. 31, 2019) (quoting *Proctor*, 412 Md. at 704) (other quotations and citations omitted). Such "'[p]ersuasive data' exists only if the 'decision of a state's intermediate court cannot be reconciled with state statutes, or decisions of the state's highest court, or both . . . .'" *Id.* (quoting *Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997, 1003 (4th Cir. 1998)). Otherwise, a federal court must follow an intermediate appellate court's decision. *Id.*

**B.      Summary Judgment**

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party can do so by demonstrating the absence of any genuine dispute of material fact or by showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F.Supp.35 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (citations omitted). The court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)). However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental, Inc.*, 962 F.Supp.2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). Consequently, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998).

**III.     DISCUSSION**

**A.     Motion for Certification**

Mr. Pitts maintains that an unsettled question of Maryland law is potentially dispositive of this case and proposes that this Court certify the following question:

> What insurance allocation rule does Maryland apply in lead-based paint bodily injury lawsuits where an insurance policy is triggered by an individual's exposure to lead-based paint, but the insurance policy at issue was not in effect for the entire period of the individual's exposure?

(ECF Nos. 23 at ¶ 10, 24).  Simply put, the question asks whether Allstate is liable for all the damages and defense costs (the "all sums method") or, instead, only the portion of the damages equal to its share of the time on the risk (the "pro rata method").  Allstate, however, argues that Maryland law already supports use of the pro rata method to allocate liability in continuous injury cases, and therefore certification is unnecessary.  (ECF No. 26).  This Court agrees with Allstate.

While the Court of Appeals for Maryland has yet to answer Defendant's proposed question directly, this Court has declined to certify this very question at least two times in the past year. Judge Hollander of this Court thoroughly considered whether the exact question proposed above should be certified in *Allstate Ins. Co. v. Rochkind*, CV ELH-17-3400, 2019 WL 1440647 (D. Md. Mar. 31, 2019), and whether a differently worded question seeking the same ends should be certified in *Allstate Ins. Co. v. N-4, Inc.*, CV ELH-17-2980, 2018 WL 5234885 (D. Md. Oct. 22, 2018).  Both requests were denied.

Without restating her entire analyses, this Court notes that Judge Hollander examined three Maryland Court of Special Appeals decisions that applied the pro rata method to continuous injury cases.  *See Mayor & City Council of Baltimore v. Utica Mut. Ins. Co.*, 145 Md. App. 256 (2002) (applying the pro rata method in continuous property damage case resulting from asbestos in

buildings); *Riley v. United Services Auto. Ass'n*, 161 Md. App. 573 (2005), *aff'd,* 393 Md. 55 (2006) (applying the pro rata method in a continuous lead-induced injuries case spanning multiple insurance policy periods); *Maryland Cas. Co. v. Hanson*, 169 Md. App. 484 (2006) (applying *Riley*'s rationale to another lead paint based injury case a year later). Not only did the Court of Special Appeals endorse and utilize the pro rata method in each of the above, but in doing so each decision uniformly declined to adopt the all sums method now desired by Pitts. *Id.* Moreover, the Fourth Circuit has also concluded that Maryland law requires the application of the pro rata method when allocating damages in lead poisoning cases. *See Roberts*, 668 F.3d 106 (4th Cir. 2012). In conclusion, Judge Hollander found case law endorsing the pro rata method and rejecting the all sums method, as well as nothing to indicate that the Court of Appeal would decide any differently. *See N-4, Inc.*, CV ELH-17-2980, 2018 WL 5234885, at *7 (2018); *Rochkind*, CV ELH-17-3400, 2019 WL 1440647, at *10 (2019).

Mr. Pitts provides nothing new to justify a different conclusion. Thus, the Court adopts Judge Hollander's rationale in *Rochkind*, CV ELH-17-3400, 2019 WL 1440647 (2019) and DENIES the Motion for Certification (ECF No. 23).

### B. Motion to Stay

Mr. Pitts also moves to stay these proceedings pending a decision in *Robinson v. CX Re*, No. 01888, Sept. Term 2016 (Md. Ct. Spec. App.), which he avers will "provide definitive guidance" on whether to apply the pro rata method or the all sums method under the circumstances at hand. As indicated above, however, the Maryland Court of Special Appeals and the Fourth Circuit have plainly held that the pro rata method governs damage allocations in continuous injury disputes in Maryland. *See supra*. Accordingly, there is no reason for delay and the Motion to Stay, (ECF No. 25), is DENIED.

C.      **Motion for Summary Judgment**

Allstate seeks a declaration limiting its liability at its pro rata allocation of damages, which Allstate estimates is 24.01%. (ECF No. 1). To calculate this number, Allstate claims that it followed the method in the Fourth Circuit's decision in *Roberts, supra*, 668 F.3d at 113. That is, Allstate claims its liability corresponds to Allstate's time on the risk divided by the period of time between Mr. Pitts' date of birth and the date he last resided at the subject property. As for the numerator, Allstate claims the Policy covered only the 213-day period from November 12, 1998 (Mr. Pitts' date of birth) to June 13, 1999 (the date of the Policy modification, excluding lead coverage). (ECF No. 22-1 at 10). As for the denominator, it asserts that the entire period during which exposure occurred is the 887-day period between November 12, 1998 (Mr. Pitts' date of birth) and April 17, 2001 (last possible date of residence at the subject property). *Id.* Therefore, Allstate believes it may be held liable for 24.01% (213/887) of damages in the underlying suit.

Mr. Pitts disagrees. First, he argues that his proposed question should be certified, which this Court will not do for reasons detailed above. (ECF No. 24). Second, he argues that the pro rata method articulated by *Roberts*, is inapplicable to the policy language at hand. And third, he argues that even if the pro rata method applies, his exposure began before birth and thus the proper start dates for calculating both the numerator and denominator are earlier than Allstate advances.

i.      **Applicability of *Roberts***

A federal court exercising diversity jurisdiction must apply the choice of law rules of the state in which it sits. *See Seabulk Offshore, Ltd. v. Am. Home Assurance Co.*, 377 F.3d 408, 418–19 (4th Cir. 2004). Here, the parties agree that Maryland law controls.

Under Maryland law, insurance policies are governed by the same principals used to interpret contracts. *Mitchell v. AARP*, 140 Md. App. 102, 116 (2001). Consequently, like

contracts, insurance policies are construed to mean what a "reasonable person in the position of the parties would have thought it meant." *Gen. Motors Acceptance Corp. v. Daniels,* 303 Md. 254, 261 (1985). Whether a contract's language is ambiguous is a question of law that the court answers by asking "if, when read by a reasonably prudent person, it is susceptible of more than one meaning." *Calomiris v. Woods,* 353 Md. 425, 436 (1999). If the language is plain and unambiguous, the Court "must presume that the parties meant what they expressed." *Daniels*, 303 Md. at 261.

Mr. Pitts maintains that the pro rata method does not apply here because the Policy language is different from that in *Roberts*, 668 F.3d 106. In *Roberts*, the insurance policy stated that it did not cover damages "for injuries that occurred outside of the policy period." *Id.* at 112. Pitts argues that the *Roberts* policy is substantially different than the one in question because this Policy states that "Allstate will pay when an insured becomes legally obligated to pay for personal injury or property damage caused by an occurrence." (ECF No. 1-2 at 13 (emphases omitted)). Relying on this language, Pitts argues that the Policy does not restrict coverage to injuries sustained during the Policy period, but instead requires Allstate to provide coverage for injuries arising from occurrences during the policy period, regardless of when those injuries manifest.

This argument, however, is directly at odds with other language within the Policy, particularly in that the Policy "applies to an **occurrence** anywhere in the world **while the insurance is in force**." (ECF No. 1-2 at 11 (second emphasis added)). "Whether it is phrased as 'during the policy period' or 'while the insurance is in force,'" the resulting plain meaning is the same." *Allstate Ins. Co. v. Blue*, ADC-18-1199, 2019 WL 266281, at *3 (D. Md. Jan. 18, 2019) (citing the same policy language to reject the same argument that defendant makes here); *Rochkind*, CV ELH-17-3400, 2019 WL 1440647, at *17 (D. Md. Mar. 31, 2019) (same). The

language of the Policy reveals an intent to cover injuries only while the Policy was in force. Accordingly, this Court is unpersuaded by Defendant's argument.

**ii. Exposure Period**

Last, Mr. Pitts asserts that the exposure period should not begin at his birth but at the date his pregnant mother moved into the property — June 18, 1998. (ECF No. 24 at 14). This would alter the pro rata calculation to a numerator of 361 days and denominator of 1035 days and result in Allstate being liable for 34.88% (361/1035) of any judgment. In support of this argument, Mr. Pitts' provides the affidavit of his expert, Dr. Aaron Zuckerberg, M.D, which cites to his report dated November 13, 2018 and declares that "[b]ased upon the foregoing, it is my opinion within a reasonable degree of medical certainty that Ky'Won Pitts was exposed to lead-based paint while in utero from the date on which his mother move to 1701 Darley Avenue until his birth." (ECF No. 24-7 at ¶ 6). Allstate argues that the Court should disregard this argument as an "last ditch" attempt to create a dispute of material fact. (ECF No. 29 at 8-10). Specifically, Allstate argues that Pitts did not disclose Dr. Zuckerberg's report when requested to do so, but instead, by interrogatory answer, simply referred Allstate to the designations of the underlying suit pending in Baltimore City Circuit Court. Allstate also notes that even had Dr. Zuckerberg's report been produced or disclosed, it fails to include any opinions, data, or facts concerning or supporting a theory of prenatal exposure. It is Allstate's contention that the Court should disregard the affidavit, and grant summary judgment, because the inclusion of the affidavit and report within the opposition was improper, in that it was not yet disclosed, and untimely, in that it occurred six days after the Rule 26(e)(2) supplementation deadline of March 12, 2019.

As an initial matter, the Court does acknowledge the seemingly abrupt nature of the prenatal exposure argument. The complaint filed in the underlying suit contains no allegations of

prenatal exposure. (*See* ECF No. 1-1). It does, however, allege exposure through physical contact, (*Id.* at ¶ 34), and ingestion. (*Id.* at ¶ 16). The discovery requests and responses provided to the Court as exhibits contain no mention of such a theory, nor does Dr. Zuckerberg's report of November 13, 2018 include any discussion as to prenatal exposure. Nevertheless, other considerations prompt the Court to exercise its discretion and not disregard the affidavit or grant summary judgment in full at this time.

Prior to the parties consenting to my jurisdiction for all further proceedings, Judge Blake of this Court initially sent the parties a proposed scheduling order to consider on November 1, 2018. (ECF No. 9). That proposed scheduling order contained an initial expert disclosure deadline for Defendants of February 19, 2019, as well as a supplementation deadline of March 12, 2019. (*Id.*). However, after a status report from and conference call with the parties on December 6, 2018, Judge Blake on that same day docketed a revised scheduling order that, inter alia, incorporated the parties' request to defer expert discovery until after resolution of dispositive motions. (ECF No. 13.) While the order retained a "supplementation" deadline, it did not contain an initial expert disclosure deadline, leading me to conclude that the inclusion of the "supplementation" deadline was inadvertent, and the whole of expert discovery (including initial, rebuttal, and supplemental designations) was being deferred until after dispositive motions. As such, this Court will not punish Defendant Pitts for failing to timely supplement an expert opinion that either he was not yet obligated to disclose or as to which Allstate had previously agreed to defer full exploration of as reflected in the revised scheduling order. Furthermore, even if the Court were to hold the parties to the Rule 26(e)(2) deadline, it is important to note that Allstate chose to file its Motion for Summary Judgment on March 4, 2019, i.e. 8 days before the supplementation deadline, over a month before the close of fact discovery, and prior to undertaking

any substantive expert discovery. Therefore, Pitts could have disclosed the opinion prior to the deadline and its information would still have been novel to the already filed motion.

Considering these scheduling issues and the mutually agreed upon deferral of expert discovery, the Court will not disregard the affidavit and finds that a genuine dispute of material fact exists as to the proper start date of the exposure period. Accordingly, Allstate's Motion for Summary Judgement is GRANTED in part, as to the applicability of the pro rata method as articulated in *Roberts*, but DENIED in part without prejudice, as to the proper start date of the exposure period. I note that Allstate remains free to challenge Dr. Zuckerberg's expertise and opinion pursuant to Federal Rules of Evidence 702 and 703, as well as relevant case law.

## IV. CONCLUSION

For the foregoing reasons, Allstate's Motion for Summary Judgment, (ECF No. 22), is **GRANTED in part**, as to the applicability of the pro rate method, and **DENIED in part, WITHOUT PREJUDICE**, as to the correct starting date of the exposure period. Furthermore, Mr. Pitts' Motion for Certification, (ECF No. 23), and Motion to Stay, (ECF No. 25), are **DENIED** with prejudice. The parties are to file a proposed scheduling order for the remainder of discovery, including expert discovery, as well as indicate any desire to be referred for a settlement conference, within fourteen (14) days of this memorandum opinion and order. A separate order follows.

Dated:  May 3, 2019                                    /s/
                                                    J. Mark Coulson
                                                    United States Magistrate Judge